IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS G. GIALAMAS,

                Appellant (Debtor),

v.                                                                                          OPINION AND ORDER

FIDUCIARY PARTNERS, a/k/a FIDUCIARY                     21-cv-481-wmc
PARTNERS TRUST COMPANY and                              Bankr. Case No: 3-18-13341
OSTP, a/k/a OLD SAUK TRAILS PARK LIMITED                Adv. Proc. 3-20-00062-tml
PARTNERSHIP,

                Appellees (Creditors).

---

      Debtor Thomas Gialamas is appealing from the bankruptcy court's decision dismissing the adversary complaint he filed in a Chapter 11 adversary proceeding in which he sought a declaration as to whether certain claims relating to a spendthrift trust were property of his bankruptcy estate, and as such, were administered and released under the confirmed reorganization plan. The bankruptcy court dismissed Gialamas's adversary complaint for failure to state a claim on which relief could be granted. (Dkt. #2-2.) On appeal, Gialamas contends that the bankruptcy court erred by focusing on the details of his claims relating to the spendthrift trust, which were not before it, rather than the underlying questions raised in his declaratory judgment complaint filed in the adversary proceeding. Appellees (creditors) argue that the bankruptcy court properly dismissed Gialamas's adversary complaint. The court agrees with Gialamas and will reverse the bankruptcy court's decision and remand this case for further proceedings.

BACKGROUND

A. Chapter 11 Bankruptcy Proceedings

Thomas Gialamas was placed into involuntary bankruptcy under Chapter 7 by petitioning creditors in October 2018. His case was converted to a Chapter 11 case in early 2019. Gialamas then proposed a Chapter 11 reorganization plan, but he withdrew it after failing to garner support for the plan from his creditors.

One of his creditors, appellee Old Sauk Trails Park Limited Partnership ("OSTP"), also proposed an alternative plan under which OSTP would contribute a cash infusion to Gialamas's unsecured creditors, as well as a settlement and discharge of the largest claims against Gialamas,[1] to which Gialamas objected. In particular, Gialamas objected to the waiver and release provisions in the plan, including § 4.5(d) of OSTP's proposed plan, which provided in pertinent part that:

> On the Effective Date, the Debtor and Reorganized Debtor are deemed to have waived and released any and all causes of action, controversies, suits, liens, lawsuits, debts, damages, breaches of contract, breaches of fiduciary duties, business torts, or any other claims in law or equity whatsoever whether known or unknown that the Debtor has, or can have at any point in time prior to the Effective Date against Adelphia, LLC, OSTP, [Gialamas Family Holdings, LLC ("GFH")] (and all other companies directly or indirectly controlled by GFH), The Gialamas Company, Inc., Park Center II, LLC, George Gialamas, Aris G. Gialamas, Gina M. Gialamas, Demetria Gialamas-Bull, George T. Gialamas 2012 Endowment Trust, Thomas G. Gialamas Cosmos II Trust, Aris G. Gialamas Cosmos II Trust, Demetria L. Gialamas-Bull Cosmos II Trust, Gina M. Gialamas Cosmos II Trust, Gialamas Family Endowment Trust, and each of foregoing's employees, fiduciaries, attorneys' and advisors.

(Dkt. #5-1, ¶ 20.)

---

[1] OSTP is a closely-held Wisconsin partnership owned by members of Gialamas's family.

Ultimately, the bankruptcy court overruled Gialamas's objections and confirmed OSTP's proposed reorganization plan under Chapter 11 on March 30, 2020, with an effective date of April 20, 2020. (Dkt. #2-9, at 30.) Gialamas did not appeal or seek reconsideration of that confirmation order.

**B. Gialamas's Spendthrift Trust and State Probate Court Proceedings**

Meanwhile, Gialamas had sued creditors (now appellees) Fiduciary Partners and OSTP in state probate court for breach of their fiduciary duties as trustee and fiduciary of the Thomas G. Gialamas Cosmos II Trust ("TGG Trust"), a spendthrift trust created originally by Gialamas's parents, to which he was the primary beneficiary. More specifically, in February 2020, six weeks before the entry of the confirmation order in the Chapter 11 bankruptcy proceedings, Gialamas had filed a petition in Dane County probate court seeking removal of Fiduciary Partners as trustee of his spendthrift trust based on alleged misconduct. Gialamas also sought damages on behalf of the trust based on actions by Fiduciary Partners and other, so-called trust fiduciaries.

While Gialamas's petition was still pending in probate court, the bankruptcy court confirmed the Chapter 11 reorganization plan. Fiduciary Partners then asserted in probate court that Gialamas had waived and released all his claims against them consistent with the release provision in § 4.5(d) of the Chapter 11 plan as quoted above. Not surprisingly, Gialamas objected, pointing out that under well-established law, spendthrift trusts are excluded from property of the bankruptcy estate.[2] He further argued that his state law breach of

---

[2] All parties agree that the Thomas G. Gialamas Cosmos II Trust is a spendthrift trust that was properly excluded from Gialamas's bankruptcy estate under 11 U.S.C. § 541(c)(2). (OSTP Br. (dkt. #6) at 19) ("OSTP agrees that the corpus of the TG Subtrust was properly excluded from the Estate in this case.") In particular, that statute exempts the *corpus* of a spendthrift trust from the

3

fiduciary duty claims belonged to the spendthrift trust, not to him personally and thus, were not released as part of the Chapter 11 reorganization plan. In contrast, Fiduciary Partners and OSTP took the position that although the *corpus* of the spendthrift trust was properly excluded from the bankruptcy estate, there was a distinction between the corpus of the trust and *causes of action* stemming from a beneficiary's interest in the trust. The probate court concluded that whether Gialamas's claims were property of his bankruptcy estate released under the Chapter 11 plan or part of the spendthrift trust was a matter that should be decided by the bankruptcy court in the first instance.

C.  The Adversary Proceeding

In light of the parties' dispute in probate court, Gialamas filed an adversary complaint in his bankruptcy case against Fiduciary Partners Trust Company and OSTP, seeking declaratory relief under 28 U.S.C. § 2201 that his claims as the beneficiary of the spendthrift trust (including, but not limited to claims against the trustee and other fiduciaries of the trust) were not property of Gialamas's bankruptcy estate and were not barred by § 4.5(d) of the Chapter 11 reorganization plan. OSTP and Fiduciary Partners answered Gialamas's adversary complaint, arguing that the claims Gialamas was asserting in state probate court in his capacity as primary beneficiary of the spendthrift trust were personal to him, property of his bankruptcy estate, and waived/released under the confirmed Chapter 11 plan. Gialamas and OSTP also filed cross motions for judgment on the pleadings on the same basis.

---

property of the bankruptcy estate, so long as the trust is enforceable under state law. *Magill v. Newman (In re Newman)*, 903 F.2d 1150, 1152 (7th Cir. 1990); *Resop v. McCoy (In re McCoy)*, 464 B.R. 832, 836 (Bankr. W.D. Wis. 2011). The dispute here, however, is whether the legal claims by or causes of action for injury to the spendthrift trust were part of the estate if asserted by Gialamas as the trust's primary beneficiary.

After hearing oral argument on the cross motions (Hear. Trans., dkt. #2-7), Bankruptcy Judge Thomas Lynch entered a memorandum decision on March 30, 2021, granting judgment on the pleadings in favor of OSTP and Fiduciary Partners and holding that Gialamas's adversary complaint failed to state a claim on which relief could be granted. (Dkt. #1-3.)

After receiving the bankruptcy court's ruling, Gialamas filed a *pro se* motion for reconsideration, which the bankruptcy court denied. (Dkt. #1-1.) Gialamas then filed an appeal in this court.

## ANALYSIS

The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), because the debtor is appealing from the bankruptcy court's final order in an adversary proceeding. *Fifth Third Bank v. Edgar Cnty. Bank & Trust*, 482 F.3d 904, 905 (7th Cir. 2007) ("A final resolution of any adversary proceeding is appealable, as it is equivalent to a stand-alone lawsuit."). The question before this court is whether the bankruptcy court properly dismissed Gialamas's claim for failure to state a claim upon which relief may be granted. Because that question is wholly a legal one, this court reviews the dismissal *de novo*. *Adams v. Adams*, 738 F.3d 861, 864 (7th Cir. 2013).

Motions to dismiss for failure to state a claim under Rule 12(b)(6) and for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure are governed by the same standard: the court must accept as true all plausible allegations of the complaint and draw all reasonable inferences in the plaintiff's favor.[3] *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016); *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28

---

[3] The parties' cross-motions for judgment on the pleadings were filed in bankruptcy court under Fed. R. Bankr. P 7012(b), which incorporates Fed. R. Civ. P. 12(b)–(i) in adversary proceedings.

(7th Cir. 2014). Thus, the court should only grant a motion for judgment on the pleadings if the complaint fails to "allege sufficient factual matter to state a claim to relief that is plausible on its face." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015); *see also Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (court should not grant motion for judgment on the pleadings "unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position"). Moreover, if a case is dismissed in early stages for pleading defects, as here, "[t]he usual standard [in the Seventh Circuit] in civil cases is to allow defective pleadings to be corrected … at least where [an] amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018) (collecting cases).

To begin, Gialamas brought his adversary complaint under 28 U.S.C. § 157(b), which permits bankruptcy courts to decide "matters concerning the administration of the [bankruptcy] estate," including "exemptions from property of the estate." He also brought his complaint under the Declaratory Judgment Act, which authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Gialamas specifically sought a declaration from the bankruptcy court that the claims he raised for harm to the TGG Subtrust was in his capacity as primary beneficiary of that spendthrift trust, and thus, neither were property of the bankruptcy estate nor released upon approval of the Chapter 11 reorganization plan.

To state a plausible claim for relief under the Declaratory Judgment Act, Gialamas was required to plead facts suggesting the existence of "a case of actual controversy." 28 U.S.C. § 2201(a). This means that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of a declaratory judgment." *Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. In'l Grp.*, Inc., 840 F.3d 448, 451 (7th Cir. 2016) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Gialamas's adversary complaint satisfies this threshold under federal pleading requirements, having expressly pleaded that: (1) he had filed a petition in probate court seeking to remove Fiduciary Partners from its role as trustee for the TGG Subtrust; (2) the removal petition alleged misconduct by Fiduciary Partners and other trust fiduciaries, including an entity that controlled OSTP; (3) the probate court defendants had responded that Gialamas's claims were barred by the Chapter 11 reorganization plan; (4) Gialamas took the position that his claims were not part of his estate and were not released through the Chapter 11 reorganization plan; and (5) the removal petition was still pending when the state probate court indicated that the issue of whether Gialamas's claims were property of his estate and released under the Chapter 11 plan should be decided by the bankruptcy court. (Dkt. #5-1, at 13.)

Drawing all reasonable inferences in Gialamas's favor, these allegations establish the existence of a concrete, substantial controversy between parties with adverse legal interests that the bankruptcy court had the authority to address under 28 U.S.C. § 157(b). Indeed, appellees do not even contest the existence of a concrete dispute before the probate court over the proper interpretation of § 4.5(d) of Gialamas's Chapter 11 reorganization plan, as well as the scope of those releases. Nor do they deny that there was an actual dispute in the bankruptcy court as well. Rather, all the parties' briefing, and the focus of their oral arguments, addressed the merits of Gialamas's interpretation of bankruptcy law and the Chapter 11 reorganization plan.

Nonetheless, the bankruptcy court determined that Gialamas had failed to identify any "justiciable controversy" for the bankruptcy court to resolve, ostensibly because Gialamas had failed to include details about "his supposed claims against the Defendants other than the

7

vague and conclusory allegation of 'misconduct,'" and therefore, the complaint fails to plausibly state a claim for determination of any particular claim as beyond the scope of the waiver and release." (Dkt. #1-3, at 8-9.) In particular, the bankruptcy court criticized Gialamas for failing to attach his petition to remove the trustees of his TGG Trust to his complaint, and concluded that Gialamas had failed to include "factual allegations" to support his argument that claims he held "in his capacity as a beneficiary of the trust are outside the scope of the waiver and release." (Dkt. #1-3, at 6, 8.)[4]

This analysis was flawed. First, Gialamas *did* identify specific claims in his adversary complaint regarding his legal and factual capacity as beneficiary of the spendthrift trust to seek removal of its trustees and other fiduciary actors from management of the trust. These allegations were sufficiently detailed for purposes of pleading. Second, whether those claims fell outside the scope of the Chapter 11 reorganization plan was not a question of "fact," as the bankruptcy court suggested; indeed, it is not clear what factual allegations Gialamas should have included that would have clarified the issue for the bankruptcy court. Rather, as the parties agree, resolution of Gialamas's claims specifically requires an interpretation of bankruptcy law provisions regarding property of the estate and exclusions for spendthrift trusts, as well as consideration of Wisconsin trust law.

To be sure, it was appropriate for the bankruptcy court to consider whether Gialamas had identified in his adversary complaint concrete, actual claims that he had purportedly asserted in his role as beneficiary of the TGG Subtrust, as opposed to hypothetical claims that he might personally assert in the future. This court agrees that it likely would be inappropriate

---

[4] In fact, appellee OSTP had actually attached Gialamas's removal petition to briefing in the bankruptcy court, but that court denied OSTP's request that it take judicial notice of that petition. (Dkt. #1-3, at 3, n.2.)

8

for the bankruptcy court, or any federal court, to issue a declaration addressing hypothetical claims that had yet to be filed based on injuries that had not yet occurred. Such allegations would lack "sufficient immediacy" to invoke a federal court's jurisdiction. *Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte*, 840 F.3d at 451 ("The mere possibility that proceedings might be commenced ... is not sufficient to create a controversy within the meaning of either the Declaratory Judgment Act or Article III of the Constitution.") (citation omitted). However, Gialamas's request for declaratory relief with respect to the claims he had *already* filed in probate court were ripe for adjudication, and his removal petition and misconduct claims involved a concrete dispute between parties with adverse legal interests.

Finally, the bankruptcy court also addressed whether it had subject matter jurisdiction to confirm the Chapter 11 reorganization plan, including the § 4.5(d) releases, concluding that it had subject matter jurisdiction under several federal statutes. (Dkt. #1-3, at 8–14.) Yet this conclusion failed to provide a basis for dismissing Gialamas's adversary complaint, as Gialamas's claim for declaratory relief was *not* based on an argument that the bankruptcy court lacked subject matter jurisdiction to confirm the reorganization plan, or that § 4.5(d) was void for lack of subject matter jurisdiction. Nor did his adversary complaint seek to amend the reorganization plan or obtain relief from the plan. Rather, Gialamas asked the court to *interpret* § 4.5(d) of the plan and clarify the scope of the releases therein. The bankruptcy court's analysis of its authority to confirm the Chapter 11 reorganization plan decidedly did *not* resolve the dispute before it.

In sum, the bankruptcy court failed to address a ripe, concrete controversy between the parties properly before it: whether Gialamas's claims in probate court of harm to the spendthrift trust raised in his capacity as primary beneficiary of the trust was property of the bankruptcy estate under § 541(a)(1) & (c)(2), and thereby released through the Chapter 11

reorganization plan. Although Gialamas also urges this court to resolve that question and declare that his claims against the trustee and fiduciaries of the spendthrift trust were not waived under § 4.5(d) of the Chapter 11 plan, the court concludes that the bankruptcy court should consider the question first, after further development of the record, if necessary. Accordingly, the case will be remanded for further proceedings.

ORDER

IT IS ORDERED that the final decision of the United States Bankruptcy Court for the Western District of Wisconsin dismissing Thomas Gialamas's adversary complaint is REVERSED. This case is REMANDED to that court for further proceedings consistent with this opinion.

Entered February 17, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge